**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION**     Plaintiff,     v. **WORLDWIDE MARKETS, LTD; TAB NETWORKS, INC; THOMAS PLAUT; and ARTHUR DEMBRO,**     Defendants. | Civ. No. 21-20715 (KM) (LDW) **OPINION & ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

    On December 27, 2021, the Commodity Futures Trading Commission ("Commission") brought the Complaint (DE 1) against Defendants WorldWideMarkets, Ltd. ("WWM"), TAB Networks, Inc. ("TAB"), Thomas Plaut ("Plaut"), and Arthur Dembro ("Dembro") (together, the "Defendants") seeking civil penalties, injunctive, and other equitable relief, for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ *et seq.*, and its implementing regulations. On August 18, 2022, I granted in part and denied in part Dembro's motion to dismiss (DE 24), in which WWM, TAB, and Plaut had joined. (DE 37 at 7-35; *see also* DE 28, 29.)

    Dembro now moves, pursuant to 28 U.S.C. § 1292(b), to certify an interlocutory appeal on the question of "whether the activities of Defendants were outside the territorial jurisdiction of this Court under the [CEA] because they were 'predominantly foreign' pursuant to" the Second Circuit's decision in *Parkcentral Global Hub Ltd. v. Porsche Auto. Holding Se*, 763 F.3d 198, 215 (2d

Cir. 2014).[1] (DE 40-1 at 2-3,7.) For the following reasons, the motion is **DENIED**.

## BACKGROUND

I assume familiarity with the factual background and procedural history of the dispute as set forth in my prior opinion granting in part and denying in part Dembro's motion to dismiss. (DE 37 at 7-35.) Most relevant to Dembro's current motion is the Court's holding that, although the CEA does not apply extraterritorially, the Commission plausibly alleged a domestic application of the statute against Defendants. (*Id.* at 17.) In analyzing extraterritoriality, the Court performed a two-step analysis to determine (1) whether the statute has an extraterritorial effect, and if not, (2) whether the focus of the Commission's claim consists in foreign conduct. (*See RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016).

First, I observed that although the CEA "is silent as to [its] extraterritorial reach," cases have typically found that the CEA "is primarily concerned with domestic conditions."[2] I found no cause to deviate from the reasoning in those cases, and agreed that the CEA does not apply extraterritorially. (DE 37 at 18.)

Second, as to the Commission's claims brought under Sections 4b(a)(2) and 6(c)(1) of the CEA and their implementing regulations (Counts I and II), I found that the CEA, like the Securities Exchange Act ("SEA"), is "transaction" focused;[3] thus, for purposes of the Court's extraterritoriality analysis, I focused

---

[1]     Dembro also cites more recent Second Circuit precedent in *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019); *Myun-Uk Choi v. Tower Research Capital LLC*, 2 F.4th 10, 14 (2d Cir. 2021).

[2]     *Id.* at 8 (citing *Loginovskaya v. Batratchenko*, 764 F.3d 266, 272 (2d Cir. 2014); *see also Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 102-103 (2d Cir. 2019) (finding that Sections 22, 6(c)(1) and 9(a)(2) lack a clear statement of extraterritorial effect); *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 66 (2d Cir. 2018) (applying Morrison's "domestic transactions" test to CEA claims); *CFTC v. Garofalo*, No. 10 C 2417, 2010 WL 11245430, at *5 (N.D. Ill. Dec. 21, 2010).

[3]     Specifically, I cited several cases in which courts have noted the similarity between the CEA and SEA. *See In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp.

2

on the forex transactions between WWM and its customers. (DE 37 at 18-19.) I also stated that courts assessing CEA claims brought by both (1) the Commission under Section 6c, 7 U.S.C. § 13a-1(a), or (2) private plaintiffs under Section 22, 7 U.S.C. § 25(a)(1) have applied the "transactional test" from *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). Under the *Morrison* test, a transaction will be considered domestic if (1) the transaction occurred on a domestic exchange or (2) the transaction itself is domestic.

Third, I observed that in determining whether a transaction is "domestic," in the context of an SEA claim, the U.S. Court of Appeals for the Third Circuit has stated that courts should consider "not … the place where the deception originated, but [the place where] purchase and sales of securities" occurred. (DE 37 at 21 (citing *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (citing *Morrison*, 561 U.S. at 266.) The Third Circuit and other courts have interpreted this to mean that the "transaction is domestic when the parties incur irrevocable liability to carry out the transaction within the United States or when the title is passed within the United States."[4] "Irrevocable liability" can be established though facts including

---

3d 298, 308 (S.D.N.Y. 2017) ("[g]iven the noted similarity between the [Securities] Exchange Act and the CEA, … the commodities transaction giving rise to the private right of action is the relevant transaction for purposes of *Morrison*'s test."); *CFTC v. Garofalo*, No. 10 C 2417, 2010 WL 11245430, at *5 (N.D. Ill. Dec. 21, 2010) (stating that the CEA and Securities Exchange Ct are "primarily concerned with the regulation of domestic exchanges" and concluding "that Morrison's transactional test should … be applied under the CEA."); *cf. Loginovskaya*, 764 F.3d at 280 (Lohier, J. dissent) (comparing Section 4b of the CEA, targeting fraudulent conduct "in connection with any order to make, or the making of, an contract of sale of any commodity," with Section 10(b) of the SEA, targeting the use of an manipulative or deceptive device "in connection with the purchase or sale of any security registered on a national securities exchange.")

[4]   *Id. See also Georgiou*, 777 F.3d at 135 (citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012*); see also SEC v. Morrone*, 997 F.3d 52, 60 (1st Cir. 2021) ("We agree with the reasoning of the Second, Third, and Ninth Circuits and hold that a transaction is domestic under *Morrison* if irrevocable liability occurs in the United States."); *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018) ("We are persuaded by the Second and Third Circuits' analysis and therefore

3

the "formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Georgiou*, 777 F.3d at 136 (citing *Absolute Activist*, 677 F.3d at 69, 70).

Fourth, applying the foregoing principles, I found that the forex trades between WWM and its customers were "domestic transactions" under *Morrison*. (DE 37 at 21.) I highlighted that in order to execute a trade on WWM's software application, customers were allegedly required to send electronic orders to WWM's server in New Jersey. (*Id.* (citing DE 1 at ¶¶ 42, 44).) Additionally, the Commission alleged that WWM (1) received orders, (2) executed trades, and (3) sent electronic trade confirmations to customers from WWM's New Jersey office. (*Id.* ¶ 45.) Because the Complaint's allegations suggested that irrevocable liability concerning the forex trades occurred within the United States, I determined that the Commission plausibly alleged a domestic application of Sections 4b(a)(2) and 6(c)(1) of the CEA. (*Id.* at 21-22.)

## DISCUSSION AND ANALYSIS

Generally, an appeal will lie only from "final decisions" of federal district courts. 28 U.S.C. § 1291; *see also Def. Distrib. v. Att'y Gen. of N.J.*, 972 F.3d 193, 198 (3d Cir. 2020). An interlocutory order, like a partial dismissal, merges with the final decision, and so an appeal encompasses review of such orders. *See Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 228 (3d Cir. 2019) (stating general merger rule). The final decision rule, however, is "subject to limited exceptions." *Def. Distrib.*, 972 F.3d at 198.

Interlocutory orders, like the partial dismissal here, merge with the final judgment, and so an appeal from that final decision encompasses review of such orders. *See Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 228 (3d Cir. 2019)

---

adopt the irrevocable liability test to determine whether the securities were the subject of a domestic transaction."); *Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens*, 645 F.3d 1307, 1310-11 (11th Cir. 2011) (allegation that closing in Florida precipitated transfer of title sufficient to satisfy *Morrison* at motion to dismiss). Facts establishing "irrevocable liability" include the "formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Georgiou*, 777 F.3d at 136 (citing *Absolute Activist*, 677 F.3d at 69, 70).

(stating general merger rule). The final decision rule, however, is "subject to limited exceptions." *Def. Distrib.*, 972 F.3d at 198.

One such exception is for certified questions. A non-final order may be certified for appeal if the court determines that it (1) involves a "controlling question of law," (2) for which there is "substantial ground for difference of opinion," and (3) which may "materially advance the ultimate termination of the litigation" if appealed immediately. 28 U.S.C. § 1292(b). A "controlling question of law" is one which, if answered erroneously, would result in reversal on appeal, or which is "serious to the conduct of the litigation, either practically or legally." *Hall v. Wyeth, Inc.*, 2010 WL 4925258 at *1 (D.N.J. Dec. 2, 2010) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc)); *see also Ensey v. Gov't Employers Ins. Co.*, No. CV 12-7669 (JEI/KMV), 2014 WL 12613400, at *2 (D.N.J. Aug. 18, 2014). A "substantial ground for difference of opinion" exists where "courts that have examined an issue reach 'conflicting and contradictory opinions … upon the particular question of law.'" *Ensey*, 2014 WL 12613400 at *2 (quoting *Kolbeck v. General Motors Corp.*, 702 F. Supp. 532, 542 (E.D. Pa. 1998)); *see also Cuttic v. Crozer-Chester Med. Ctr.*, 806 F. Supp. 2d 796, 804-05 (E.D. Pa. 2011) ("[S]ubstantial grounds for difference of opinion exist where there is general doubt or conflicting precedent as to the correct legal standard.") Finally, certification may materially advance a lawsuit's ultimate termination where "the moving party shows that an immediate appeal would (1) eliminate the need for trial, (2) reduce the extent or cost of discovery, or (3) simplify the trial by eliminating complex issues." *Children First Found., Inc. v. Legreide*, Civ. No. 04-2137, 2005WL 3088334, at *10 (D.N.J. Nov. 17, 2005).

Certification, however, is discretionary, and I may decline certification of a question for immediate appeal even if the minimum criteria are met. *Ensey*, 2014 WL 12613400 at *2 (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)); *ADP, LLC v. Ultimate Software Grp., Inc.*, Civ. No. 16-8664, 2018 WL 1838003, at *3 (D.N.J. Apr. 17, 2018). Moreover, the Third Circuit has long

disfavored piecemeal appeals and departure from the final decision rule. *See Def. Distrib.*, 972 F.3d at 198; *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 479 n.7 (1975) ("[I]n deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" (quoting *Gillespie v. United States Steel.*, 379 U.S. 148, 152-53 (1964))).

  I turn to Dembro's motion for certification. With respect to the first element, I agree that the issue presented involves a "controlling question of law." In my prior opinion, I found that even if the Court were to apply *Parkcentral*'s holding, the Commission's claims are not "so predominantly foreign as to be impermissibly extraterritorial." (DE 37 at 22 (citing *Parkcentral*, 763 F.3d at 216.)) Leaving aside the forex trades between WWM and customers, I emphasized that the Commission alleged that WWM and TAB shared an office in New Jersey, in which both Plaut and Dembro worked as corporate officers. (*Id.* ¶¶ 1, 16.) From this New Jersey office, the Complaint asserts, Plaut "controlled all aspects of WWM's and TAB's business activities as the companies' CEO." (*Id.* ¶ 15). From the same New Jersey office, Dembro, as WWM's CFO, (1) "performed accounting and financial reporting functions" and (2) was involved in the development of WWM's marketing materials to prospective customers and Introducing Brokers. (*Id.* ¶¶ 16, 76, 82-85.) Moreover, Dembro allegedly knew that restricted funds were being transferred from WWM to TAB, and the Commission contends that Dembro repeatedly informed Plaut that these unlawful transfers were occurring. (*Id.* ¶¶ 12, 52, 76, 89-91.)

  Nonetheless, the question of whether a transaction is domestic under the CEA is of indisputable importance to the case. That is true whether under the (1) Second Circuit's *Parkcentral*'s "predominantly foreign" standard advocated for by Defendants or (2) the Third Circuit's "irrevocable liability" standard applied by the Court. Whether the Commission can permissibly assert the

claims in Counts I and II against the Defendants is contingent on the Court's answer to this question; thus, if the Court's analysis were erroneous, Defendants would likely succeed in dismissing these Counts.

The Court does not believe, however, that Dembro has demonstrated that the issue is a cause of "general doubt or conflicting precedent." *See Cuttic*, 806 F. Supp. 2d at 804-05. The Second Circuit appears to be the *only* Circuit to apply *Parkcentral*'s "predominantly foreign" standard to CEA or SEA claims; [5] both the First and Ninth Circuit explicitly reject *Parkcentral*'s holding as inconsistent with *Morrison*.[6] More to the point, the Third Circuit, which binds this Court, has spoken. The Third Circuit standard applied by the Court holds that "a transaction is domestic when the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States."[7] That standard is consistent with the standards used by the First, Ninth and Eleventh Circuits in assessing whether a transaction is domestic.[8] I will not certify a question for appeal on the chance

---

[5]   Notably, *Parkcentral* did not involve a CEA claim, but a SEA § 10(b), SEC Rule 10b-5, claim. *See* 763 F.3d at 216.

[6]   *See Morrone*, 997 F.3d at 60 ("Morrison says that §10(b)'s focus is on transactions.… The Court explicitly said that, if a transaction is domestic, §10(b) applies. The existence of a domestic transaction suffices to apply the federal securities laws under *Morrison*."); *Stoyas*, 896 F.3d at 950 (stating that the "principal reason" the court did not adopt *Parkcentral* "is because it is contrary to Section 10(b) and *Morrison* itself," as the decision "carves-out 'predominantly foreign' securities fraud claims from Section 10(b)'s ambit.")

[7]   *Georgiou*, 777 F.3d at 135.

[8]   *See SEC v. Morrone*, 997 F.3d 52, 60 (1st Cir. 2021) ("We agree with the reasoning of the [pre- *Parkcentral*] Second, Third, and Ninth Circuits and hold that a transaction is domestic under *Morrison* if irrevocable liability occurs in the United States."); *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018) ("We are persuaded by the [pre- *Parkcentral*] Second and Third Circuits' analysis and therefore adopt the irrevocable liability test to determine whether the securities were the subject of a domestic transaction.")*; Quail Cruises Ship Mgmt. Ltd. v. Agencia de Viagens*, 645 F.3d 1307, 1310-11 (11th Cir. 2011) (allegation that closing in Florida precipitated transfer of title sufficient to satisfy *Morrison* at motion to dismiss).

that the Third Circuit might (presumably at the en banc stage) reverse itself and buck the prevailing Court of Appeals case law.

Conflicting Second Circuit precedent alone, quite obviously, does not demonstrate a conflict within the Third Circuit; nor does Dembro offer any authority to suggest that such conflict exists. *See, e.g., Cosimano v. Twp. of Union*, 2017 WL 4790381 at *2 (D.N.J. Oct. 23, 2017) ("[T]he substantial ground for difference of opinion must be within the Third Circuit.") Accordingly, Dembro has failed to show a "substantial ground for difference of opinion" warranting the certification of Dembro's proposed question.

## ORDER

**IT IS THEREFORE**, this 9th day of September, 2022,

**ORDERED** that Dembro's motion for certification (DE 40) is **DENIED.**

/s/ Kevin McNulty

———————————————
**Hon. Kevin McNulty
United States District Judge**