## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

COMMODITY FUTURES TRADING
COMMISSION,

               **Plaintiff,**

v.

WORLDWIDE MARKETS, LTD; TAB
NETWORKS, INC; THOMAS PLAUT;
and ARTHUR DEMBRO,

               **Defendants.**

Civ. No. 21-20715 (KM) (LDW)

**OPINION & ORDER**

**KEVIN MCNULTY, U.S.D.J.:**

      This matter comes before the Court on two motions to dismiss the amended complaint, one of which was filed by defendant Arthur Dembro (DE 60) and the other of which was filed by defendants Thomas Plaut, Worldwide Markets, Ltd. ("WWM"), and TAB Networks, Inc. ("TAB") (DE 64).[1] I will refer to the latter three defendants collectively as the "Plaut defendants," as Plaut is alleged to have owned and controlled both WWM and TAB, which are New

---

[1]    Citations to the record will be abbreviated as follows:

    AC = Amended complaint (DE 54)

    Dembro Mot. = Memorandum of law in support of Dembro's motion to dismiss the amended complaint (DE 60)

    Plaut Mot. = Memorandum of law in support of the Plaut defendants' motion to dismiss the amended complaint (DE 64)

    Opp. to Plaut Mot. = Memorandum of law in opposition to the Plaut defendants' motion to dismiss the amended complaint (DE 67)

    Dembro Repl. = Memorandum of law in further support of Dembro's motion to dismiss the amended complaint (DE 66)

Jersey-headquartered companies. For the reasons set forth below, the motions to dismiss are **DENIED**.

## I. Background

Plaintiff Commodity Futures Trading Commission (the "Commission") commenced this action in December 2021, seeking civil penalties, injunctive, and other equitable relief for violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, and its implementing regulations. The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and in August 2022, I granted in part and denied in part their motion. (DE 37, "Op." or the "Opinion")

My Opinion ruling on the motion to dismiss contains a detailed statement of the factual background of the case, which I will not repeat here. To summarize, the Commission alleges that between May 2011 through at least September 2018, the defendants perpetrated a scheme to defraud customers of WWM, a retail foreign exchange ("forex") dealer. The fraudulent scheme involved (1) misappropriating over $4 million in WWM customer funds and (2) misrepresenting to WWM customers that their funds would be held in segregated accounts.

TAB is a British Virgin Islands ("BVI") entity that owns WWM. Plaut, as the owner and CEO of both WWM and TAB, is alleged to have directed the fraudulent scheme with the substantial assistance of Dembro, who served as the CFO of both entities. Although nominally separate companies, TAB and WWM are alleged to have operated as a common enterprise, sharing an office in Woodcliff Lake, New Jersey. (AC ¶28.)

For purposes of this motion, the following rulings, or sets of rulings, from the prior Opinion are relevant.

First, I concluded that the Commission had stated a claim for misappropriation of customer funds against all defendants. The complaint sufficiently alleged that WWM committed the principal violation, that TAB was jointly and severally liable as a common enterprise, that Plaut was liable as the controlling individual of WWM, and that Dembro was liable for aiding and

abetting the misappropriation. (Op. 25-35.) With respect to the fraudulent misrepresentation claims, I concluded that the Commission had stated a claim against all defendants except Dembro. (*Id.* 33-35.)

The second relevant set of rulings from the Opinion concerns the timeliness of the action. Pursuant to 28 U.S.C. § 2462, a five-year statute of limitations applies to any "action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," except as otherwise provided by an act of Congress. Relying on § 2462, the defendants argued that the complaint should be dismissed as to all conduct that occurred prior to December 27, 2016—five years before the filing of the complaint.

Interpreting recent Supreme Court and Third Circuit precedent, I concluded that the § 2462 five-year statute of limitations applies to the Commission's request for civil monetary penalties but not to its request for injunctive relief, as an injunction does not serve as a "penalty" within the meaning of § 2462. With respect to the request for disgorgement and restitution, I held that the parties did not adequately brief the issues of whether those forms of relief are "penalties" subject to the five-year statute of limitations.

That a five-year statute of limitations applies to some of the Commission's claims for relief, however, did not settle the timeliness matter. Rather, the Commission sought to invoke the doctrine of fraudulent concealment to toll the limitations period. As I noted in the Opinion, equitable tolling under the doctrine of fraudulent concealment has three essential elements: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of his or her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to his or her lack of reasonable diligence in attempting to uncover the relevant facts." (Op. 12 (Citing *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006)). Setting aside whether the Commission had established the first two elements of fraudulent concealment, I concluded that the complaint "lacks facts bearing on the Commission's due diligence in uncovering Defendants'

alleged wrongdoing." (*Id.*) In particular, the Commission failed to allege when it discovered the fraudulent scheme or even that it was ignorant of the fraud at any time more than five years before the filing the complaint. I therefore held that the Commission had not adequately pled fraudulent concealment and dismissed the Commission's claim for civil monetary penalties as untimely. This dismissal was without prejudice to the filing of an amended complaint that remedied the deficiencies identified. (*Id.* at 13.)

The Commission filed its amended complaint on October 5, 2022. (DE 54.) On October 18, 2022, Dembro moved to dismiss the amended complaint for failure to state a claim. (DE 60.) The Plaut defendants followed suit on November 2, 2022. (DE 64.) The motions are now fully briefed and ripe for decision.

## II.    Legal standards

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of resolving a Rule 12(b)(6) motion to dismiss, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The Federal Rules of Civil Procedure do not require that a complaint contain detailed factual allegations. *See* Fed. R. Civ. P. 8(a). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (Citation omitted)). Thus, the complaint's factual

allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570. That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. Discussion

#### A. Fraudulent concealment

##### i. Applicability to Section 2462

Before analyzing whether the amended complaint has adequately alleged fraudulent concealment, I will address the defendants' argument that fraudulent concealment is not a basis for tolling the statute of limitations set forth in § 2462. (Plaut Mot. 7-10; Dembro Mot. 19-20.)

The defendants rely on the Supreme Court's decision in *Gabelli v. S.E.C.*, 568 U.S. 442 (2013), which held that the "discovery rule" is inapplicable to SEC actions seeking civil penalties. The discovery rule prevents the accrual of a cause of action until the claim is discovered or could have been discovered with reasonable diligence by the plaintiff. *Id.* at 447. As I previously explained:

> Chief Justice Roberts provided three main reasons for not extending the discovery rule to "Government enforcement actions for civil penalties." First, the "discovery rule exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury"; by comparison, a Government enforcement action is the product of the agency's duty to investigate potential violations of the law. Second, "the discovery rule helps to ensure that the injured receive recompense," whereas civil penalty actions are intended to punish. Third, "[d]etermining when the Government, as opposed to an individual, knew or reasonably should have known of a fraud presents particular challenges for the courts." *Id.* at 450-454.

(Op. 10.)

In a footnote in *Gabelli*, Chief Justice Roberts "distinguished the discovery rule, which governs when a claim accrues, from doctrines that toll the running of an applicable limitations period when the defendant

takes step beyond the challenged conduct itself to conceal that conduct from the plaintiff." *Id.* at 447, n.2. Because the SEC disclaimed reliance on any such doctrines, the Court did not directly address whether they could serve as a basis to toll the limitations period in § 2462. As the Third Circuit also has not addressed this issue, it remains an open question whether an agency can invoke fraudulent concealment to toll the statute of limitations in an action seeking civil penalties, such as this one.

Some background on the fraudulent concealment doctrine is in order. Third Circuit case law predating *Gabelli* recognizes fraudulent concealment as an equitable doctrine "'that is read into every federal statute of limitations.'" *Cetel*, 460 F.3d at 508 (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001)). The basic principle underlying the doctrine is that "a party should not be permitted to profit from its own wrongdoing." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1388–89 (3d Cir. 1994) (citing *Miklavic v. USAir Inc.*, 21 F.3d 551, 557 (3d Cir.1994)). "To allow a defendant to benefit from the statute of limitations defense after intentionally misleading the plaintiff with regard to the cause of action, thereby causing the plaintiff's tardiness, would be 'manifestly unjust.'" *Oshiver*, *supra. See also LaVallee Northside Civic Ass'n v. Coastal Zone Management*, 866 F.2d 616, 625 (3d Cir.1989) (stating that equitable tolling is based on the equitable principle that, having unfairly lulled the plaintiff into inaction, the defendant may not profit by such wrongful conduct through invocation of the statute of limitations defense).

By contrast, as mentioned above, the purpose of the discovery rule is to preserve the claims of victims who do not know that they are injured. *See Gabelli*, 568 U.S. at 450. While the focus of fraudulent concealment is on the *perpetrator* and is intended to ensure that those who commit a wrong do not benefit from it, the focus of the discovery rule is on the *victim* and is intended to ensure that that those who are unwittingly injured receive just

6

compensation. Indeed, courts in this Circuit have observed both before and after *Gabelli* that this is the "fundamental difference" between the discovery rule and equitable tolling doctrines. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 614 (3d Cir. 2015). "The discovery rule and the equitable tolling doctrine are distinct." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 542 (D.N.J. 2013). The former exists to determine when the statute of limitations effectively begins to run, while the latter "'steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.'" *G.L.*, *supra* (quoting *Oshiver*, 38 F.3d at 1390).

   *Gabelli*'s rationale for holding that the discovery rule does not apply to a Government enforcement action seeking civil penalties, then, does not obviously bear on the applicability of the fraudulent concealment doctrine.[2] Recognizing this, at least one court has held post-*Gabelli* that fraudulent concealment may be used to toll the limitations period in an SEC action seeking civil penalties. *See U.S. S.E.C. v. Geswein*, 2 F. Supp. 3d 1074, 1084 (N.D. Ohio 2014). The court in *Geswein* construed *Gabelli* narrowly, "refus[ing] to read more into the Supreme Court's decision than it says on its face." *Id.*

   I agree with the *Geswein* decision's narrow reading of *Gabelli*. The lengthy history of equitable tolling of federal statutes of limitation by reason of fraudulent concealment, the distinctions between the discovery rule and the

---

[2]   It is true, of course, that the Commission has a duty to investigate potential violations of the law, whereas an individual does not. The discovery rule applies, however, regardless of whether the defendant actively misled the plaintiff. *See G.L.*, 802 F.3d at 613. Because fraudulent concealment requires a plaintiff to demonstrate this additional element, it is fair to allow a Government agency to benefit from the doctrine where the Government can show that it was ignorant of the fraud by virtue of the defendant's active concealment and through no fault of its own.

   It is also true that the third reason underlying *Gabelli*'s holding—the difficulty of determining when the Government "knew or reasonably should have known of a fraud"—is relevant to the use of fraudulent concealment to toll an agency enforcement action. *Gabelli*, 568 U.S. at 452-53. Although this may present a challenge for the Court, the burden will be on the Commission to prove the underlying facts regarding its discovery of the fraud, including that it did not lack due diligence in failing to uncover the fraud sooner.

fraudulent concealment doctrine, and the absence of controlling authority to the contrary all point in the same direction. I hold that the Commission may invoke fraudulent concealment as a basis for tolling the limitations period set forth in § 2462. I will therefore turn to whether the Commission has adequately alleged fraudulent concealment in the amended complaint.

### ii. Allegations of the amended complaint

"[F]raud, and thus fraudulent concealment, must be pleaded with particularity." *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984). *See* Fed. R. Civ. P. 9(b) (setting forth a heightened pleading standard for allegations of fraud). As discussed, a plaintiff seeking to rely on fraudulent concealment must allege: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of his or her claim within the limitations period; and (3) [that] the plaintiff's ignorance is not attributable to his or her lack of reasonable diligence in attempting to uncover the relevant facts." *Cetel*, 460 F.3d at 509.

"Active misleading involves 'tak[ing] steps beyond the challenged conduct itself to conceal that conduct from the plaintiff.'" *LabMD Inc. v. Boback*, 47 F.4th 164, 181 (3d Cir. 2022) (quoting *Gabelli*, 568 U.S. at 447 n.2). Here, the amended complaint alleges several acts beyond the challenged conduct that served to conceal it. First, beyond merely misappropriating customer assets and misrepresenting the manner in which WWM held customer assets, the defendants allegedly *used* the misappropriated funds to conceal their scam. In particular, they diverted customer funds to pay TAB/WWM operating expenses, including employee salaries and benefits. (AC ¶90.) This kept the scam operational, allowing WWM to continue to hold itself out as a legitimate financial services company and solicit new customers and deposits.

In addition, WWM is alleged to have intentionally evaded regulatory requirements. Under the CEA and Commission regulations, WWM was required to register as a retail forex dealer and was subject to various reporting requirements, including filing a monthly form indicating its financial condition

and providing immediate notice to the Commission if its adjusted net capital fell below a specified amount. (AC ¶¶96-97.) In spite of these requirements, WWM did not register with the Commission, did not file the monthly forms, and did not provide notice to the Commission of its significant undercapitalization. (*Id.* ¶¶98-100.) Had it done so, the Commission would have been alerted to the issues WWM faced and would have discovered the fraud sooner.

Finally, WWM allegedly attempted to hide the fact that it was headquartered in the United States. (AC ¶101.) WWM listed a BVI address on its website and customer account agreement, and did not list its New Jersey address on either. (*Id.* ¶¶102, 104.) In doing so, WWM sought to obscure the fact that it was subject to the Commission's regulations and enforcement action. This evidently worked for a time, as WWM customers who found they were unable to withdraw funds submitted their complaints to the BVI Financial Services Commission and to the U.K. Financial Ombudsman; they did not know that they should submit such complaints to the Commission. (*Id.* ¶¶105-106.)

The defendants argue that none of this amounts to active misleading for purposes of fraudulent concealment. (Plaut Mot. 11.) That they failed to register with the Commission, report their financial circumstances, or publicize their New Jersey location does not, according to the defendants, constitute *active* conduct sufficient to toll the statute of limitations. Inaction or silence, defendants say, is not equivalent to active misleading.

"Silence does toll the statute of limitations, however, if the defendant has an affirmative duty to disclose the relevant information to the plaintiff." *Sprint Commc'ns Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (citing *Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C. Cir. 1979)). *See also Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) ("Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.") Because WWM had an affirmative obligation to register with the

Commission and abide by the reporting requirements, its failure to do so constitutes active conduct.

The defendants also argue that their misrepresentations were directed towards their customers, rather than towards the Commission, and that therefore they did not "actively misle[a]d *the plaintiff*," as is required to invoke the fraudulent concealment doctrine. *Cetel*, 460 F.3d at 509. (Emphasis added.) (Dembro Mot. 17-18; Plaut Mot. 13-14.) This argument ignores the allegations that the defendants failed to register WWM as a retail forex dealer and comply with the corresponding reporting requirements. That fraudulent conduct was separate and apart from the defendants' misrepresentations to their customers and is plausibly alleged to have had its intended effect of preventing the Commission from uncovering the fraud for several years. Accordingly, I reject the argument that the defendants did not actively mislead the Commission.

Turning to the second element of the fraudulent concealment test, the amended complaint alleges that the Commission "first learned any information about WWM based on referrals from another regulator," the first of which occurred on October 30, 2017. (AC ¶117.) Given that the fraudulent scheme is alleged to have began in May 2011, the amended complaint adequately alleges facts to support the contention that the Commission was not aware of its claim within the five-year limitations period. *See Cetel*, 460 F.3d at 509.

To satisfy the third element of the test, the Commission must demonstrate that its ignorance is not attributable to its "lack of reasonable diligence in attempting to uncover the relevant facts." *Cetel*, 460 F.3d at 509. "In determining whether a plaintiff exercised due diligence, the Court must consider: (1) whether the plaintiffs knew or should have known of the possibility of fraud because there were sufficient storm warnings on the horizon, and, (2) whether, if there were such warnings, plaintiffs exercised due diligence to recognize them and to determine their origin and the extent of the fraud." *In re Elec. Carbon Prod. Antitrust Litig.*, 333 F. Supp. 2d 303, 317

(D.N.J. 2004) (Citation omitted.) *See also Prudential Ins. Co. of America v. U.S. Gypsum Co.*, 359 F.3d 226, 238 (3d Cir. 2004).

Because we are at the motion to dismiss stage, I must accept the amended complaint's allegations of reasonable diligence as true. According to the Commission, there were no "storm warnings" or suspicious circumstances that would have alerted it to the fraudulent scheme prior to October 30, 2017. No customers complained to the Commission about WWM and no regulators (foreign or domestic) referred any information concerning WWM to the Commission until October 30, 2017. That WWM at all times obscured its New Jersey headquarters and failed to register with the Commission or comply with the reporting requirements adds to the plausibility of these allegations. There does not appear to be any reason that WWM—purportedly a BVI company—would have been on the Commission's radar at all.

As alleged in the amended complaint, the scam did not begin to unravel until April or May 2017. Around that time, WWM refused to allow its customers to withdraw money from their forex accounts. (AC ¶¶94-95). To the outside world, then, everything appeared fine until April or May 2017 at the earliest. That the Commission caught on to the fraud in October 2017, some six months later, does not suggest a lack of reasonable diligence. After all, WWM concealed the fact that it was subject to the Commission's regulatory oversight at all. The amended complaint alleges that WWM customers submitted complaints to BVI and U.K. regulators after the April-May 2017 period, but it evidently took several months for anyone to realize that WWM was even located within the United States. (AC ¶106.)

According to the defendants, the allegations surrounding the Commission's discovery of the scheme are not specific enough to demonstrate that the Commission was reasonably diligent. (Plaut Mot. 15; Dembro Mot. 15.) In particular, the complaint does not explain what information the unidentified regulator provided to the Commission, when that other regulator learned of the potential violations, or why that other regulator learned that WWM was subject to the Commission's jurisdiction before the Commission itself did. (Plaut Mot.

15; Dembro Mot. 16.)

Federal Rule of Civil Procedure 9(b), which sets the heightened pleading standard for fraud, does not require every material detail to be alleged. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Here, the Commission has alleged when and how it first received notice of the defendants' scheme. The Court is not aware of any authority demonstrating that more specific details are required. The one decision cited by the defendants to support their argument is inapposite, as the plaintiffs in that case failed to allege "when and how" they discovered the conspiracy that gave rise to their claims. *See In re Magnesium Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *25 (D.N.J. Oct. 20, 2011). Those plaintiffs merely asserted in a vague manner that because of the secretive nature of the conspiracy, they could not have discovered the violations "until recently." *Id.* Unlike those plaintiffs, however, the Commission here has adequately and factually alleged due diligence for purposes of fraudulent concealment.[3]

A final argument advanced by Dembro requires some discussion. Dembro argues that even if it can be shown that Plaut, WWM, and TAB fraudulently concealed their misconduct, those acts of concealment are not attributable to him. As a result, says Dembro, the statute of limitations cannot be tolled as to the Commission's claims against him as an individual. (Dembro Mot. 17.)

---

[3]     Dembro argues that the Commission has failed to allege that it acted with due diligence because it admits that it was on notice of the fraudulent scheme as of October 30, 2017, and yet it waited until December 2021 to commence this action. (Dembro Mot. 16.) This is a misinterpretation of the due diligence requirement. All that the Commission must show is that its lack of awareness of the fraud is not attributable to its failure to uncover the fraud with reasonable diligence. *See Cetel*, 460 F.3d at 509. If that is shown, and the other elements of the fraudulent concealment test are met, then the statute of limitations is tolled until October 30, 2017, giving the Commission five years from that date to file its complaint. *See SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 102 (4th Cir. 2018). *See also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 505 (9th Cir. 1988) ("It is irrelevant whether [plaintiff] was diligent in pursuing its possible claims after [it had notice of them] in July of 1982, because no due diligence is required within the limitations period.")

Several courts have held that "affirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations." *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989). *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008); *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1084 (2d Cir. 1988). The reason behind this conclusion is readily apparent: the cover-up benefits all participants of the conspiracy, ensuring that none of them are caught. Although there is no allegation of conspiracy in this case, there is the related allegation of aiding-and-abetting liability. At least one court has held that, for purposes of tolling a statute of limitations, affirmative acts of one defendant to conceal a fraud are attributable to another defendant who is charged with aiding and abetting the fraud. *U.S. S.E.C. v. Power*, 525 F. Supp. 2d 415, 426 (S.D.N.Y. 2007).

Because Dembro is alleged to have aided and abetted the misappropriation of WWM's customer funds, I conclude that the acts of concealment carried out by the other defendants may be imputed to Dembro.[4] I note in addition that as CFO of WWM, Dembro is alleged to have "performed accounting and financial reporting functions" for the company. (AC ¶16.) Considering his job responsibilities, it is a plausible inference, though not an inescapable one, that Dembro played a direct role in WWM's failure to register WWM with the Commission and comply with the reporting requirements applicable to retail forex dealers. Imputation of others's acts to Dembro, then, may not ultimately turn out to be necessary.

Accordingly, I hold that the amended complaint adequately alleges fraudulent concealment. The motions to dismiss the Commission's claims for civil monetary penalties as untimely are denied as to all defendants.

### B. Section 2462's application to claims for restitution and

---

[4]     In his reply brief, Dembro asserts that out-of-court statements by other defendants are only admissible against him under certain circumstances. (Dembro Repl. 3.) It is not clear which statements Dembro is referring to, but in any event, the Court need not make such evidentiary rulings at the motion to dismiss stage.

**disgorgement**

In seeking to dismiss the amended complaint, the defendants argue that the § 2462 five-year statute of limitations applies not only to the Commission's claims for civil monetary penalties, but also to its claims for disgorgement and restitution. (Plaut Mot. 16-19.) Setting aside underlying factual issues, I must therefore determine whether, as a matter of law, those other remedies requested by the Commission are subject to the § 2462 statute of limitations.

The Supreme Court's decision in *Kokesh v. S.E.C.*, 581 U.S. 455 (2017), provides the starting point for analysis. Recall that § 2462 generally applies to any "action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." In *Kokesh*, the Supreme Court held that this language encompasses SEC enforcement actions seeking disgorgement, because "[d]isgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty." 581 U.S. at 467. The Court explained that "whether a sanction represents a penalty turns in part on whether the wrong sought to be regressed is a wrong to the public, or a wrong to the individual." *Id.* at 461. In addition, "a pecuniary sanction operates as a penalty if it is sought for the purpose of punishment, and to deter others from offending in like manner rather than to compensate victims." *Id.* at 462.

In *S.E.C. v. Gentile*, 939 F.3d 549 (3d Cir. 2019), the Third Circuit held that injunctions pursuant to SEC enforcement actions are not "penalties" subject to § 2462's statute of limitations. *Id.* at 566. The Court reasoned that, under *Kokesh*, such injunctive actions are intended to enforce "public laws"; they do not serve punitive purposes, but rather remedial ones, as their purpose "is to forestall future violations." *Gentile*, 939 F.3d at 556 (quotation omitted). Relying on *Gentile*, I concluded in my prior opinion that the Commission's claim for injunctive relief was not subject to the statute of limitations in § 2462. (Op. at 14.) I adhere to that ruling.

With respect to disgorgement and restitution, I concluded that both forms of relief "are remedies imposed by the 'court as a consequence for

violating public laws'—satisfying the first principle identified in *Kokesh* for determining whether a sanction constitutes a penalty." (Op. at 16 (quoting *Kokesh*, 581 U.S. at 463.)) Nonetheless, I noted that neither party had briefed the issue of "how Commission disgorgement or restitution operates in practice, *Gentile*, 939 F.3d at 557, and whether these remedies appear to satisfy the second *Kokesh* principle: [that they] are only 'sought for the purpose of punishment, and to deter others from offending in like manner'—as opposed to compensating a victim for his loss." (Op. at 17 (quoting *Kokesh*, 581 U.S. at 462.)) I further observed that "the issue of whether a proposed remedy is a penalty subject to Section 2462 is a 'fact-intensive inquiry,' particularly ill-suited for a motion to dismiss." (Op. at 17 (quoting *U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 11 C 8567, 2013 WL 3791691 at *8 (N.D. Ill. Jul. 18, 2013)).

The Commission appears to concede that disgorgement in the context of this action would function as a penalty and therefore falls within the ambit of § 2462. (Opp. to Plaut Mot. 21.) The Commission insists, however, that restitution is distinct, in that it does not serve punitive purposes. (*Id.* 22-24.) The Commission points to the plain language of the CEA, which authorizes the Commission to seek restitution as a remedy to facilitate compensation "to persons who have sustained losses proximately caused by [a defendant's] violation (in the amount of such losses)." 7 U.S.C. § 13a-1(d)(3)(A). The Commission also cites an out-of-circuit decision issued after *Kokesh,* holding that Commission restitution does not operate as a penalty. *See U.S. Commodity Futures Trading Comm'n v. Southern Trust Metals, Inc.*, No. 14-22739-CIV, 2017 WL 10440763, at *4 (S.D. Fla. July 6, 2017), *report and recommendation adopted*, No. 14-22739-CIV, 2017 WL 3835692 (S.D. Fla. Sept. 1, 2017).

*Southern Trust* emphasized that the CEA requires restitution to be paid to victims, not the U.S. Treasury, and is limited to the amount of loss sustained by the victims. *Id.* Thus restitution payments are to be distinguished from disgorged profits, which are "paid to the district courts, which have

discretion to determine how the money will be distributed. They may distribute the funds to victims, but no statute commands them to do so." *Kokesh,* 581 U.S. at 465. Indeed, *Kokesh* stated, disgorgement functions as a penalty because it is not compensatory, and may sometimes exceeds the profits gained as a result of the violation. *Id.* at 466. Thus, the *Southern Trust* court found significant distinctions between the manner in which SEC disgorgement and Commission restitution operate in practice.

The defendants, for their part, cling to a paragraph at the end of the *Kokesh* decision, in which the Court recognized that disgorgement "serves compensatory goals in some cases." 581 U.S. at 466-67. As the Court explained, "'sanctions frequently serve more than one purpose.'" *Id.* (quoting *Austin v. United States,* 509 U.S. 602, 610 (1993)). "Because [d]isgorgement orders go beyond compensation, are intended to punish, and label defendants wrongdoers as a consequence of violating public laws . . . they represent a penalty and thus fall within the 5-year statute of limitations of § 2462." *Id.* (Citation omitted.) According to the defendants, then, restitution serves a deterrent function in addition to compensating victims, and therefore must be considered a penalty under *Kokesh.* (Plaut Mot. 18.)

The Third Circuit has recognized that, in some cases, civil restitution "serves a deterrent function." *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 229–30 (3d Cir. 2005). That principle, however, is general. The defendants have not demonstrated that restitution ordered under the CEA, specifically, operates as a deterrent. The regulatory scheme of the CEA suggests a certain division of labor between disgorgement and restitution: the disgorgement remedy is intended to punish and deter, while the restitution remedy serves to compensate.

The defendants cite an out-of-circuit decision holding that restitution under the CEA serves a punitive purpose in part and is thus subject to § 2462. *See U.S. Commodity Futures Trading Commission v. Gramalegui*, No. 15-cv-02313-RE-GPG, 2018 WL 4610953 (D. Colo. Sept. 26, 2018.) That decision,

16

however, relies substantially on Supreme Court authority discussing restitution in the context of a criminal case. *See Paroline v. United States,* 572 U.S. 434, 453–54 (2014); *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). I am not persuaded that such authority is relevant to the issue of whether civil restitution, and in particular restitution under the CEA, qualifies as a penalty under *Kokesh*.

Accordingly, I hold that the Commission's claim for disgorgement is subject to the five-year statute of limitations, but the claim for restitution is not. Nevertheless, the disgorgement claim, like the claim for civil monetary penalties, is not now subject to dismissal on timeliness grounds, because the Commission has successfully pled fraudulent concealment. *See* Part III.A.ii, *supra*.

### IV.   ORDER

Accordingly, for the reasons set forth above,

**IT IS** this 5th day of June, 2023

**ORDERED** that the motions to dismiss the amended complaint filed by defendant Arthur Dembro (DE 60) and by defendants Thomas Plaut, Worldwide Markets, Ltd. ("WWM"), and TAB Networks, Inc. ("TAB") (DE 64) are **DENIED**.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

17